UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIMEY ALLEN,

        Plaintiff,                                 Hon. Paul L. Maloney

v.                                                  Case No. 1:14-CV-86

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

        The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 37 years of age on her alleged disability onset date. (Tr. 160). She successfully completed high school and previously worked as a nurse assistant and child monitor. (Tr. 22). Plaintiff applied for benefits on September 1, 2010, alleging that she had been disabled since January 1, 2006, due to back and neck problems. (Tr. 160-70, 193). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 67-130). On August 3, 2012, Plaintiff appeared before ALJ Nicholas Ohanesian with testimony being offered by Plaintiff and a vocational expert. (Tr. 29-66). In a written decision dated September 5, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 13-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2011. (Tr. 15). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease; (2) migraines; (3) chronic pain syndrome; and (4) peripheral neuropathy, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-17). The ALJ next determined that Plaintiff retained the capacity to perform light work[2] subject to the following limitations: (1) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) she can only occasionally balance, stoop, kneel, crouch, or crawl; (3) she should avoid concentrated exposure to excessive noise and vibrations; (4) she "should avoid all exposure to hazards"; and (5) she should be allowed to alternate between sitting and standing positions every thirty minutes. (Tr. 18).

The ALJ found that Plaintiff cannot perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert at the administrative hearing.

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

The vocational expert testified that there existed in the state of Michigan approximately 12,300 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.[3] (Tr. 58-61). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.         **Plaintiff's Credibility**

The medical evidence reveals that for many years Plaintiff experienced significant symptoms stemming from back and neck impairments. (Tr. 245-76, 453-504, 1116-36, 1315-59, 2039-67). Plaintiff's condition deteriorated to the point where she was experiencing "severe degenerative disc disease with cervical spondylosis at cervical 5-6 and cervical 6-7 creating spinal cord compression as well as nerve root compression with associated radiculopathies in bilateral upper extremities." (Tr. 1263). Plaintiff underwent cervical spinal surgery in 2008. (Tr. 282-86, 1263-64). While this surgery appeared to alleviate certain of Plaintiff's symptoms, Plaintiff continued to experience pain and limitation for which she consistently received pain injections. (Tr. 347-509, 1159-1211, 1259-62, 1359-1409, 2068-86, 2113-46, 2165-82).

At the administrative hearing, Plaintiff testified that she was limited to a far greater extent than recognized by the ALJ. (Tr. 40-57). Simply stated, Plaintiff testified that she could only intermittently perform a very limited range of activities. (Tr. 40-57). The ALJ found Plaintiff less

---

[3] In his opinion, the ALJ stated that the vocational expert identified 21,500 such jobs. (Tr. 23). This appears to be an inaccurate calculation based upon a mistaken "double counting" of one category of jobs identified by the vocational expert. (Tr. 60-61).

6

than credible, however, and discounted her subjective allegations. (Tr. 19). Plaintiff argues that she is entitled to relief because the ALJ failed to articulate sufficient reasons for discounting her credibility. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

7

However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at *16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

In support of his decision to discount Plaintiff's credibility, the ALJ stated the following:

> The claimant alleges that she suffers from anxiety, depression, degenerative disc disease, migraines, chronic pain syndrome and peripheral neuropathy. As a result, the claimant alleges she experiences pain, cannot work and has difficulty sleeping (Ex. 4E). The claimant also alleges she has difficulty concentrating, completing tasks and remembering (Ex. 4E). Additionally, the claimant alleges she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting and using her hands (Ex. 4E). Despite these allegations, the claimant attends to her personal hygiene, cares for pets and does laundry (Ex. 4E). The claimant also cleans, drives and shops (Ex. 4E). Additionally, the claimant pays bills, goes to movies and uses a computer (Ex. 4E). Here, the claimant has described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations, which weakens her credibility.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations resulting from her degenerative disc disease, migraines, chronic pain syndrome, and peripheral neuropathy.

(Tr. 19).

First, the ALJ relies on Exhibit 4E to support his credibility assessment. The exhibit in question is a report, completed by Plaintiff on September 30, 2010, in which she described her activities. (Tr. 215-22). The ALJ's interpretation of, and reliance upon, this document does not survive scrutiny. For example, the ALJ states that Plaintiff "cares for pets and does laundry." (Tr. 19). What Plaintiff actually reported, however, paints a different picture. With respect to animal

care, Plaintiff reported that she merely "let[s] them out to go to the bathroom and they sleep in bed with me but my daughter walks them and my son feeds them." (Tr. 216). Plaintiff further stated that "my entire family helps with all the pets." (Tr. 216). As for laundry, Plaintiff reported simply that she will "fold a couple loads of laundry." (Tr. 216).

The ALJ also stated that Plaintiff "cleans, drives, and shops." (Tr. 19). Plaintiff actually reported, however, that her mother pays for somebody else to clean her house. (Tr. 217). As for the ALJ's observation that Plaintiff drives, Plaintiff merely reported that she leaves the house (other than to get her mail) only twice weekly and either drives or rides when doing so. (Tr. 218). Finally, Plaintiff reported that her daughter and boyfriend usually do the shopping, but that she will shop "on occasions," but that such excursions usually last no longer than 20 minutes. (Tr. 218).

Simply stated, the ALJ has mischaracterized and misinterpreted the contents of the exhibit in question. Contrary to the ALJ's conclusion, Plaintiff's responses to this particular report are consistent with her testimony at the administrative hearing. Furthermore, the fact that Plaintiff is able to perform a limited range of activity for short periods of time is not inconsistent with a claim of disability. *See, e.g., Leos v. Comm'r of Soc. Sec.*, 1996 WL 659463 at *2 (6th Cir. 1996) (the fact that a claimant performed limited nonstrenuous activities does not preclude a finding that she experiences pain to a disabling degree); *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) ("sporadic or transitory activity does not disprove disability"); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (to be found unable to engage in substantial gainful activity the claimant need not "vegetate in a dark room" or be a "total basket case").

As for the ALJ's assertion that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations," the Court is

equally unpersuaded. In support of this conclusion, the ALJ relied on a very small portion of the medical record. An assessment of the entire record contrasts with the ALJ's brief observations. Moreover, portions of the record cited by the ALJ were unfairly mischaracterized. For example, the ALJ cited to a June 2009 examination, stating as follows:

> In June of 2009 while at Greater Michigan Spine and Neurology Institute, the claimant rated her pain as a nine out of ten, and complained of weakness, numbness and tingling (Ex. 7F). The claimant was noted to have some joint stiffness and limitation of movement at this time (Ex. 7F). An examination of the claimant's upper and lower extremities was unremarkable, as the claimant had full range of motion, no joint instability, and no swelling or effusions (Ex. 7F). An x-ray of the claimant's cervical spine demonstrated anterior spinal fusion at C5-6 and C6-7 (Ex. 7F). Hardware appeared to be intact with no obvious failure, and it was in an appropriate position (Ex. 7F). The x-ray also showed degenerative disc disease (Ex. 7F).

(Tr. 20).

This statement omits certain relevant portions of the doctor's report which are consistent with Plaintiff's allegations. For example, with respect to Plaintiff's cervical spine, the doctor reported the following:

> Inspection is abnormal. Tenderness to palpation in the cervical spine is present. Muscle spasm is present. Range of motion is decreased. Range of motion is painful. Cervical spine nerve root provocation testing is positive.

(Tr. 395).

Moreover, while the ALJ suggests that the results of this particular examination were consistent with his RFC determination, a closer examination of the doctor's report suggests otherwise. The doctor diagnosed Plaintiff with instability of the cervical spine, cervicalgia, degenerative disc disease, and disc disorder. (Tr. 396). The doctor further reported that Plaintiff was

11

suffering "C5-6, C6-7 cervical degenerative disc disease, cervical spondylosis, broad based disc bulging with bilateral foraminal and central canal stenosis, spinal cord and exiting nerve root compression leading to cervicalgia with bilateral upper extremity radiculopathy." (Tr. 396).

In sum, the ALJ's assessment of Plaintiff's credibility is inconsistent with the aforementioned legal standard and is not supported by substantial evidence.

**II.         Nurse Brubaker's Opinion**

On September 22, 2008, Family Nurse Practitioner Julie Brubaker reported that Plaintiff could perform certain "nursing" activities so long as she not lift more than 15 pounds. (Tr. 2110). With respect to this opinion, the ALJ concluded as follows:

> Julie Brubaker, FNP opined the claimant could occasionally lift thirty-five pounds (Ex. 19F). This opinion is given some weight as it is supported by some objective medical evidence. This opinion was not given more weight as it was given by an unacceptable medical source. As pointed out in 20 CFR 404.1513 and 416.913, reports about an impairment must come from acceptable medical sources. Acceptable medical sources are identified as licensed physicians, licensed osteopaths, licensed or certified psychologists, licensed optometrists, and persons authorized to send summaries of medical records of a hospital, clinic, sanitarium, medical institution or health care facility. Subsection (e) indicates that information from other sources might help in understanding how an impairment affects an individual's ability to work. "Other sources" include, inter alia, practitioners such as naturopaths, chiropractors, and the like. Family nurse practitioners are not identified as acceptable medical sources, but "other" sources, and I must rely on the opinions of the treating and consulting medical specialists who examined the claimant.

(Tr. 21).

As Plaintiff correctly asserts, there are two shortcomings with the ALJ's assessment of Nurse Brubaker's opinion. First, Brubaker did not, as the ALJ asserts, opine that Plaintiff can lift

12

35 pounds. As Plaintiff notes, the portion of the record to which the ALJ cites is an opinion offered by a different care provider altogether. (Tr. 2053).

More significantly, the ALJ does not appear to have properly evaluated Nurse Brubaker's opinion. As the ALJ correctly notes, Nurse Brubaker is not an acceptable medical source. While an opinion from an unacceptable medical source is not entitled to any deference, the ALJ is nevertheless required to assess such pursuant to factors such as the nature and extent of the treatment relationship and the supportability of the opinion. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 378 (6th Cir. 2013). The ALJ did not undertake an assessment of Nurse Brubaker's opinion, but instead simply stated that, "I must rely on the opinions of the treating and consulting medical specialists who examined the claimant." (Tr. 21).

The Court recognizes that Nurse Brubaker is not considered an acceptable medical source. Nonetheless, considering that Nurse Brubaker's opinion is not consistent with the ALJ's RFC determination, the ALJ's error is not harmless. The ALJ was required to evaluate the nurse's opinion pursuant to certain criteria, but failed to do so. While the Court recognizes that certain errors or shortcomings may fairly be characterized as harmless, the Sixth Circuit has also observed that "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). In this particular context, the Court cannot characterize this particular error as harmless.

**III.     Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved"

13

and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

While the medical record reveals that Plaintiff suffers significant functional limitations, the Court cannot conclude that Plaintiff is entitled to disability benefits. Plaintiff's credibility must be properly evaluated and there are certain evidentiary conflicts in the record which must be resolved, tasks which this Court is neither competent nor authorized to undertake in the first instance. It may also be necessary to determine whether a more restrictive RFC is appropriate and whether there exist a significant number of jobs which Plaintiff could perform consistent with such. Proof of Plaintiff's disability is not overwhelming and while there exists strong evidence that Plaintiff is disabled there also exists evidence to the contrary. The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 19, 2015         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge